IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARY LINDA FRYER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 1:13cv545-MEF-TFM |
| | ) | (WO) |
| SOUTHEASTERN CAREER APPAREL, | ) | |
| | ) | |
| Defendant. | ) | |

_____

| | | |
|---|---|---|
| MARY LINDA FRYER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 1:13cv683-MEF-TFM |
| | ) | (WO) |
| SOUTHEASTERN CAREER APPAREL, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I.   INTRODUCTION

The plaintiff, Mary Linda Fryer, a former employee of Southeastern Career Apparel Inc., ("SECA") brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"), alleging that she was discriminated against on the basis of her race (African-American) and was sexually harassed and retaliated against by her employer, SECA. This court has jurisdiction of Fryer's discrimination claims pursuant to the jurisdictional grant in 42 U.S.C. § 2000e-5.    The

District Judge referred this case to the Magistrate Judge for all pretrial proceedings and recommendation.   (Doc. 3)   Thereafter, this court granted the motion to consolidate 1:13-cv-545 and 1:13-cv-683, and designated 1:13-cv-545 as the lead case.   (Doc. 17).

Now pending before the court is Defendant's motion for summary judgment and supporting briefs and exhibits filed January 30, 2014 (Doc. 31) to which Plaintiff filed responses on March 31, 2014 (Docs. 37 and 38) and May 12 and 14, 2014 (Docs. 45 and 47).   Also before the court is Defendant's response to Plaintiff's motion to be heard and attached exhibits (Doc. 25) and Defendant's objections and response to Plaintiff's answers to Defendant's motion for summary judgment and attached exhibits.   (Doc. 41).   The court has carefully reviewed the motion for summary judgment, the briefs filed in support of and in opposition to the motion, and the supporting and opposing evidentiary materials and concludes that the motion is due to be granted.

## II.   SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."   This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim.   *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Jeffery v Sarasota White Sox, Inc.,* 64 F.3d 590, 593 (11th Cir. 1995); *Edwards v. Wallace Cmty Coll.,* 49 F.3d 1517, 1521 (11th Cir. 1995).

The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element of his claims, and on which he bears the burden of proof at trial.   *Id.* To satisfy this burden, the nonmovant cannot rest on the pleadings, but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue for trial.   FED. R. CIV. P. 56(e).

The court's function in deciding a motion for summary judgment is to determine whether there exist genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a matter of law.   *See Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d 1559 (11th Cir. 1987).   It is substantive law that identifies those facts which are material on motions for summary judgment.   *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986); *See also DeLong Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499 (11th Cir. 1989).

When the court considers a motion for summary judgment, it must refrain from deciding any material factual issues.   All the evidence and the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant.   *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir. 1990). *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).   The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983).

3

### III.   FACTS

Plaintiff worked as a seamstress for SECA until February 26, 2014.  Plaintiff's pleadings filed with this court are difficult to follow, at best.   While Plaintiff consistently alleges claims of discrimination, sexual harassment and retaliation, she changes the factual allegations supporting these claims throughout her pleadings.   Further, many of these allegations are nonsensical or unintelligible.   Although the court is required to liberally construe a *pro se* litigant's pleadings, the court does not have "license to serve as *de facto* counsel for a party . . . or to rewrite an otherwise deficient pleading in order to sustain an action."  *GRJ Investments, Inc. v. County of Escambia, Fla,* 132 F. 3d 1359, 1369 (11th Cir. 1998) (citations omitted).   However, in order to fairly address Plaintiff's claims, the court will summarize Plaintiff's factual allegations as stated in her Charges of Discrimination filed with the Equal Employment Opportunity Commission ("EEOC"), her two complaints and other pleadings filed in this court and her responses to Defendant's discovery.

The record reflects that Plaintiff filed two EEOC charges alleging sexual harassment, discrimination and retaliation by her employer, SECA.  In her first Charge filed June 18, 2012, Plaintiff complained that she was sexually harassed, retaliated and discriminated against by "Mary Reeves", "(Black, Floor Supervisor)"[1] and that she complained of this to Starla Anderson, Jerry Mills, and J.E. Saliba, SECA management.

---

[1]  The undisputed evidence demonstrates that Mary Reeves' correct name is "Mary Reese" and she is a black female and a coworker with Plaintiff.   (Doc. 31-1) Affid. Marshall Crim, President of SECA.

Specifically, she alleges that "Reeves" referred to her as "sexy" and "brushed against me [sic] breast," required her to repair white and Asian seamstresses' faulty work and wrote her up for refusing to do the repair work.   (Doc. 31-2 at p. 28).   In her second Charge filed July 21, 2013, she alleges she was retaliated and discriminated against when following her first EEOC Charge, Jerry Mills, Plant Supervisor "wrote me up for not filling out a Payroll Adjustment/Vacation Request Form" and for leaving an hour early, even though "Mary Reeves, (White Floor Supervisor) approved me to leave one hour early . . . to attend a funeral."   (Doc. 31-2 at p. 30).

In her first complaint filed with this court on July 30, 2013, Plaintiff alleges "sexual harassment, retaliation and discrimination" and specifically states that "Mary Reeves, female floor supervisor", sexually harassed her by calling her "sexy", brushed against her breast, came in on her in the bathroom, grabbed her hands, stared at her and followed her to her apartment.   She also states, without more, that "Mary Reeves, Jerry Mills and Hellen West is retaliating against me."   She next states "Mary Reeves is stocking [sic] me but at work she wont come or ack [sic] like she don't hear me when I call.   Made me a cake and I told her not too.   Mary Reeves follow me around at work."   (Doc. 1- Case No. 13cv545).

In her second complaint filed with this court on September 23, 2013, Plaintiff alleges "retaliation" and race discrimination "brought on by sex harassment." Specifically, she states "I was written up without given time to hand in my assentee sheet – dereat by been n yell at – follow everywhere – all my work would be return that had been

passn - was not allow to talk & co-worker was told not to talk to me they have did everything to be but spit on me & slap me." [sic] (Doc. 1- Case No. 13cv683).

In her response to Defendant's interrogatories Plaintiff states that she was sexually harassed by Mary Reese, when she called her sexy, came in on her in the bathroom, brushed up against her breast, grabbed her hands, eavesdropped on her, and followed her home and to the Wal-Mart.   (Doc. 25-1 pps.2-3).   She also states that she was retaliated against because she received an unfounded write up, was followed around the plant, not properly trained to do a new job, her "rework" was returned, "would not answer me when Id [sic] call"; "if Id asked a question I be told by Mary Reeves just put some thread in it"; "rules would change when it came to me."   (Doc. 25-1 p.2).    She also states that she was discriminated against because she was required to fix white employees' deficient work, was not allowed to help with new work, was not allowed to move around the facility as were white employees, was not allowed to talk to other workers,[2] "and was excluded from co adienda's like I did not have a fire dreal parme I got one now.   I never seen cards of thanks or sick nothing. [sic]"   (Doc. 25-1 p. 4).   In response to additional discovery requests, Plaintiff further states that she was retaliated against for her discrimination claims when Jerry Mills required her to "inspect the dress - cause Mrs. Brenda went in his office crying.   So now they expect me to check all labels – make sure the right ply, [sic] which is Brenda's job."   (Doc. 25-3 p.10).

---

2 This claim that Plaintiff was not allowed to talk to other workers or freely move around the facility, appears to arise from a factual scenario where two white co-employees, who were husband and wife, ate lunch without Plaintiff. (Doc. 37 p. 2)

Plaintiff's Answer includes factual allegations which, in part restate her previously stated claims, and also which state entirely new facts.   She claims these facts demonstrate a hostile work environment.   Again, these statements are difficult to follow, but to the best of the court's ability the factual allegations are set out below.   First, she claims there was a meeting where it was discussed that she failed to repay a loan to SECA.   Second, she was required to do other employees "re-work".   Third, her employer caused her to "look like [she] was late" because the lunch bell and late bell rang early.   Fourth, her employer only cared if she answered her personal calls, not other people.   Fifth, she was limited access to lunch areas.   Sixth, a co-worker said "out loud, what you don't get it, we don't want you here dogg". Seventh, her co-workers "would start mess[ing] with me" and this caused her to "talk to my self and use profanity not out loud but when left alone woke quitly sing to my self thereby cause a further unsafe work environment [sic]."   Eighth, her co-workers asked her to do others "rework". Ninth, her co-worker's broke the rules and had open containers on the sewing floor.   Tenth, she was discriminated against because she reported someone smoking in the bathroom.   Eleventh, she restates the numerous allegations previously made against Mary Reese.   Twelfth, her co-workers conversations about "sports (football games)" . . . "created an unsafe work place."   Finally, she complains that her co-workers did poor quality work and management did nothing about it.   (Doc. 37 pp. 1-4).   In addition to requesting damages for sexual harassment, retaliation and discrimination, Plaintiff requests damages for "hospital bills", "wrongful termination" and "on going theriphy [sic] and doctors".   (Doc. 37 p. 6).

The undisputed facts demonstrate that Plaintiff sent numerous letters to SECA complaining about various aspects of her employment.   These letters include claims of sexual harassment by Mary Reese, who worked in the sewing department of SECA with Plaintiff.   Plaintiff identifies this employee as Mary Reeves, throughout her pleadings and identifies her race as white and black at different times.   She further alleges that she was "floor supervisor".   However, the evidentiary materials demonstrate that Mary Reese is a black co-employee of Plaintiff. (Doc. 31, affids, M. Crim and J. Casey).   Further, none of these letters include any allegation of racial discrimination.   *Id.*   SECA investigated the claims of sexual harassment in May and June of 2012.   (Doc. 31. affid. M. Crim).   As part of the investigation, SECA representatives, Marshal Crim, SECA President and John Casey, SECA Production Manager, met with Plaintiff about her claims.   They also met with Ms. Reese and cautioned her "to abstain from comments and words that might be misconstrued as suggestive, lewd, or sexual in nature" including, specifically, the word "sexy".   (Doc. 31, affids. J. Casey and M. Crim).   Ms. Reese denied Plaintiff's allegations in the meeting.   *Id.*

The EEOC investigated Plaintiff's complaints contained in the first EEOC charge which was filed on June 18, 2012.   (Doc. 31, affid. M. Crim).   In response to other of Plaintiff's other complaints, SECA conducted a second internal investigation in April, 2013.   As part of this investigation, John Casey, SECA Production Manager, met with Jerry Mills, SECA plant manager, to discuss Plaintiff's allegations that Mills followed her around the plant, yelled at her, witnessed Ms. Reese touching Plaintiff's shoulder, focused

solely on Plaintiff's trips to the time clock, and threatened to fire her. (Doc. 31, affid. J. Casey, Exhibits E and F).   In that meeting, Mills denied Plaintiff's allegations and gave an explanation for his actions.   *Id.*   Casey cautioned him to treat Plaintiff with the same respect with which he treated other employees.   *Id.*

On April 29, 2013, the EEOC sent Plaintiff a Dismissal and Notice of Rights which stated that the EEOC was "unable to conclude that the information obtained establishes violations of the statutes." (Doc. 31, affid. M. Crim, Ex. C).   Thereafter, on July 21, 2013, Plaintiff filed another Charge of Discrimination with the EEOC, wherein Plaintiff alleged racial discrimination for being issued a warning relating to a payroll form and for leaving early on one occasion.   (Doc. 31 affid. M. Crim. Ex. D).   In response to this charge, the EEOC conducted a short investigation wherein the charges were found to be meritless. On July 31, 2013, the EEOC issued another Dismissal and Notice of Rights which stated that the EEOC was "unable to conclude that the information obtained establishes violations of the statutes."   *Id.*   On July 30, 2013, Plaintiff filed a complaint with this court in Civil Action 1:13-cv-545.   On September 23, 2013, Plaintiff filed a second complaint with this court in Civil Action 1:13-cv-683.

Defendants maintain that Plaintiff was not terminated or demoted or required to change her job as a result of these complaints; nor did she suffer any decrease in pay or other change in employment benefits.   (affid. M. Crim; affid. J.Mills; affid J. Casey).   It is undisputed that on November 25, 2013, Plaintiff failed to report for work and failed to provide SECA with any explanation of the reason for her absence until she presented

SECA a "Certification of Health Care Provider for Employee's Serious Health Condition" dated February 10, 2014 (*Id;* Doc 37-13).   It is also undisputed that Plaintiff was hospitalized from November 26, 2013 until December 5, 2013 as the result of anxiety and depression.   (Doc. 37-13).   Following her hospitalization, Plaintiff did not return to work. On February 26, 2014, SECA sent Plaintiff a letter notifying her that she was terminated for failure to submit timely FMLA documents to substantiate her absence and further that her 12 week FMLA leave period had expired the week before, on February 19, 2014. (Doc. 37-14).


## V.  DISCUSSION

### A.  TERMINATION

When Plaintiff filed her Complaints with this Court in July and September of 2013, she was employed by SECA.   She was terminated on February 26, 2014.   The court has carefully reviewed record evidence including Plaintiff's numerous pleadings filed with the court, a number of which were filed after Plaintiff's termination.   *See* (Docs. 37 and 38), Plaintiff's Answer to Defendant's Motion for Summary Judgment (Doc. 45), Plaintiff's Motion to be Heard and (Doc 46), Plaintiff's Answer to defendant's submission. Nowhere does Plaintiff contend that her termination was racially motivated. Neither does she contend that her termination was in retaliation for her internal

complaints made to SECA, or her EEOC charges or her Complaints filed with this court.[3]

However, in her Answer to Defendant's Motion for Summary Judgment filed March 31, 2014, Plaintiff, under her request for damages, includes a reference to "wrongful termination" and to "on going theraphy [sic] and doctors".   (Doc. 37 p. 6).

   To establish a prima facie case of wrongful termination, a plaintiff must prove that (1) she belongs to a protected class; (2) she was discharged; (3) she was replaced by an individual outside the protected class; and (4) she was qualified for the position held. *Coutu v. Martin County Bd of County Comm'rs,* 47 F. 3d 1068, 1073 (11th Cir. 1995). The court has carefully reviewed the record, including those documents filed after Plaintiff's termination.   Nowhere does Plaintiff allege or present any evidence of any person outside her protected class being hired as her replacement.   Thus, the court concludes that Plaintiff's vague references in her Answer to Defendant's Motion for Summary Judgment (Doc. 37 p. 6) fail to establish a *prima facie* case of wrongful termination.

   This claim is not properly before the court, but assuming arguendo that Plaintiff's

---

[3] Indeed, the undisputed evidence demonstrates Plaintiff was terminated on February 26, 2014. Her first Complaint was filed with this court on July 30, 2013 and her second Complaint was filed with this court on September 23, 2013.   Her EEOC charges and internal complaints to SECA were made prior to those dates.   Thus, considering the undisputed facts in this case, a causal connection between Plaintiff's termination and SECA's alleged conduct is extremely questionable.   *See Miller-Goodwin v. City of Panama City Beach,* 385 Fed. App'x. 966, 974 (11th Cir. 2010) (insufficient proximate cause to survive a motion for summary judgment on retaliation claim where there were eight and four month delays between employee's protected activities and adverse employment action.)

references to medical treatment and termination might implicate some claim under the Family Medical Leave Act 29 U.S.C § 2601 *et. seq.* ("FMLA"), the court notes that under the FMLA, an employee is entitled to up to twelve weeks of leave each year if she has a "serious health condition that makes the employee unable to perform the functions of the position of such employee". *See* 29 U.S.C. § 2612(a)(1).  The undisputed evidence demonstrates that Plaintiff failed to report to work on November 25, 2013 and was hospitalized from November 26, 2013 until December 5, 2013.  After Plaintiff failed to return to work for more than two months following her hospitalization, SECA sent Plaintiff a termination letter on February 26, 2014, notifying her that she was terminated because her 12 week FMLA leave period had expired the week before, on February 19, 2014 and she had failed to submit timely FMLA documents to substantiate her absence.  (Doc. 37-14).

The FMLA creates two types of claims: (1) interference claims, in which an employee asserts that his employer denied or otherwise interfered with this substantive rights under the Act, *see* 29 U.S.C. § 2615(a)(1); and (2) retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in an activity protected by the Act, *see* 29 U.S.C § 2615(a)(1)&(2).  *Wascura v. City of South Miami,* 257 F. 3d 1238, 1247, 48 (11th Cir. 2001)(citations omitted).  Again the court has carefully reviewed record evidence including Plaintiff's numerous pleadings filed with the court and concludes that Plaintiff does not contend SECA violated her FMLA rights

12

or retaliated against her because she took medical leave.   Accordingly, the court concludes that these vague references fail to establish a *prima facie* case of an FMLA violation.

## B. DISCRIMINATION

Title VII prohibits discrimination on the basis of race, color, religion, sex, or national origin in a variety of employment practices.   *See Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995).   Specifically, Title 42 U.S.C.A. § 2000e-2(a)(1) provides:

> "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."

In an employment discrimination case, the plaintiff bears the ultimate burden of proving that the defendant intentionally discriminated against him.   *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).   Plaintiff states in her responses to Defendant's Interrogatories that she was discriminated against because she was made to fix white employees' deficient work, was not allowed to help with new work, was not allowed to move around the facility as were white employees, was not allowed to talk to other workers, "and was excluded from co adienda's like I did not have a fire dreal parme I got one now.   I never seen cards of thanks or sick nothing [sic]."   (Doc. 25-1 p. 4).

Plaintiff's June 18, 2012 EEOC charge and complaint filed with this court in Civil

13

Action 1:13-cv-545 contain a claim for discrimination, but Plaintiff mainly makes allegations of sexual harassment by "Mary Reeves (Black, Floor Supervisor)" and others. Plaintiff makes one statement in the EEOC charge that "Reeves directs me to repair faulty work for one white seamstress and two Asian seamstresses".   Also, in Plaintiff's July 21, 2013 EEOC charge she alleges that she was "written up" because she was black. Further in her complaint filed in Civil Action 1:13-cv-683 she alleges that she was "written up" because she was black, her work was returned and she was not allowed to talk to co-workers. Thus, reading the complaint liberally, as this court is required to do, the court will evaluate Plaintiff's discrimination claim as a disparate treatment claim.

To demonstrate a prima facie case of disparate treatment, a plaintiff must show: (1) she belongs to a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees more favorably; and (4) she was qualified to do the job. *EEOC v. Joe's Stone Crab, Inc.,* 220 F. 3d 1263, 1286 (11th 2000).   Plaintiff meets the first prong.   However, not just any incident in employment will rise to the level of "an adverse employment action" which is defined as "a serious and material change in the terms, conditions, or privileges of employment."   *Kidd v. Mando American Corp.,* 731 F.3d 1196, 1203 (11th Cir. 2013) (citations omitted) (No adverse employment action where plaintiff suffered only loss of supervisory responsibilities without decrease in pay or change in job title).   Further, "the employee's *subjective* view of the significance and adversity of the employer's action is not

14

controlling; the employment action must be *materially adverse as viewed by a reasonable person in the circumstances.*"   *See Davis v. Town of Lake Park, Fla.,* 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis added) (Claims that employee was ignored at a party, was not told of an event cancellation, and was accused of making a scene are not actionable).   With the exception of possibly the "re-work" and write-up claims, the court views Plaintiff's other claims as "subjective" claims which are not actionable under the "reasonable person" standard in *Davis, id.*

As for Plaintiff's disparate treatment claim based on the write-up and being assigned to repair coworkers faulty work, the court recognizes that other courts have refused to find "an adverse employment" action where there were allegations of differences in training and discipline without change in employment conditions.   *See Stovall v. Compass Group,* 2014 WL 2803522 at *5, n.5 (S.D. Ala. 2014) citing *Shepard v. United Parcel Serv., Inc.* 470 F.App'x 726, 731 (11th Cir. 2012) and *Wallace v. Ga. Dep't of Transp.*, 212 F.App'x 799, 801 (11th Cir. 2006); *See also*, *Melton v. National Dairy LLC,* 705 F. Supp. 2d 1303, 1338 (M.D. Ala. 2010) (Court granted summary judgment as to plaintiff's claims for "inadequate training as compared to white drivers", disparate treatment in equipment because he was given "bad trucks", disparate treatment in protection of property because his car was vandalized in parking lot at work and incident was not investigated and claims for disparate discipline for being written up.)

The undisputed evidence demonstrates that Plaintiff was not terminated or demoted

or required to change her job as a result of these complaints; nor did she suffer any decrease in pay or other change in employment benefits.   (affid. M. Crim; affid. J.Mills; affid J. Casey).   Indeed, the facts show that on November 25, 2013, Plaintiff failed to report for work and failed to provide SECA with any explanation of the reason for her absence until she presented SECA a "Certification of Health Care Provider for Employee's Serious Health Condition" dated February 10, 2014 (*Id;* Doc 37-13).   After Plaintiff failed to report for work for three months, SECA sent Plaintiff a letter notifying her that she was terminated for failure to submit timely FMLA documents to substantiate her absence and further that her 12 week FMLA leave period had expired the week before, on February 19, 2014.   (Doc. 37-14).   Accordingly, after careful review, the court concludes that Plaintiff's evidentiary submissions, which consist mainly of her own vague and conclusory allegations, do not create a genuine issue of material fact about whether SECA subjected her to an adverse employment action for the purposes of her discrimination claim.

## C. RETALIATION

For the most part, Plaintiff's retaliation claims are simply a restatement of her discrimination claims.   In her June 18, 2012, EEOC charge and in her Complaint filed in 1:13-cv-545, Plaintiff claims that she was retaliated against for complaining about Mary Reeves sexually harassing her.   In her July 21, 2013, EEOC charge she alleges that she was retaliated against for filing a prior EEOC charge when she was written up for failing

16

to fill out a vacation form.    In her Complaint filed in 1:13-cv-683 Plaintiff alleges SECA retaliated against her by writing up her failure to fill out an absentee form, requiring her to perform "rework" and not allowing her to talk to co-workers.    Furthermore, in her responses to Defendant's Interrogatories Plaintiff alleges that due to her complaints SECA retaliated against her by writing her up for an unfounded reason, following her around the plant, failing to properly train her to do a new job, returning her "rework", ignoring her and treating her differently and requiring her to fix white employees' work. (Doc. 25-1 p. 2 and 25-3 p. 10).

To establish a *prima facie* case of retaliation under Title VII, Plaintiff must show that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between her protected activity and the adverse action.    *Pennington v. City of Huntsville,* 261 F.3d 1262, 1265-1266 (11th Cir. 2001) (citations omitted).    As with a Title VII discrimination claim, a *prima facie* case of retaliation requires that Plaintiff be subjected to "an adverse employment action."    Thus, Plaintiff must demonstrate that the actions SECA allegedly took against her rise to the level of "an adverse employment action" such that she was subjected to "a serious and material change in the terms, conditions, or privileges of employment."    *Kidd,* 731 F.3d at 1203.

The undisputed evidence demonstrates that Plaintiff was not terminated or demoted or required to change her job as a result of these complaints; nor did she suffer any decrease

17

in pay or other change in employment benefits.   (affid. M. Crim; affid. J.Mills; affid J. Casey).   Indeed, the facts show that on November 25, 2013, Plaintiff failed to report for work and failed to provide SECA with any explanation of the reason for her absence until she presented SECA a "Certification of Health Care Provider for Employee's Serious Health Condition" dated February 10, 2014 (*Id;* Doc 37-13).   After Plaintiff failed to report for work for three months, SECA sent Plaintiff a letter notifying her that she was terminated for failure to submit timely FMLA documents to substantiate her absence and further that her 12 week FMLA leave period had expired the week before, on February 19, 2014.   (Doc. 37-14).

After careful review, the court concludes that Plaintiff's evidentiary submissions, which consist mainly of her own vague and conclusory allegations, do not create a genuine issue of material fact about whether SECA subjected her to an adverse employment action for the purposes of her retaliation claim.   *Kidd,* 731 F.3d at 1203. Moreover, Plaintiff fails to provide the court with factual information about the timing of the alleged retaliatory actions sufficient to create a factual question on the question of whether there was a "causal link" between her alleged "adverse action" and her filing EEOC charges and complaints in this court.   *Pennington,* 261 F. 3d 1265-66; *See also Miller-Goodwin,* 385 Fed App'x. at 974.

### D.   HOSTILE WORK ENVIRONMENT

Reading Plaintiff's complaints broadly, as the court is required to do, the court

18

evaluates Plaintiff alleged a hostile work environment claim based on sexual and racial harassment.   An employee alleging a Title VII claim based on harassment must demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."   *Harris v. Forklift Sys. Inc.,* 510 U.S.17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993).   In her Answer to Motion for Summary Judgment Plaintiff alleges for the first time that she was subjected to a hostile work environment.

Specifically, Plaintiff alleges as follows:

- There was a meeting where it was discussed that she failed to repay a loan to SECA.
- She was required to do other employees "re-work".
- Her employer caused her to "look like [she] was late" because the lunch bell and late bell rang early.
- Her employer only cared if she answered her personal calls, not other people.
- Her access to lunch areas was limited.
- A co-worker said "out loud, what you don't get it, we don't want you here dogg".
- Her co-workers "would start mess[ing] with me" and this caused her to "talk to my self and use profanity not out loud but when left alone woke quitly sing to my self thereby cause a forther unsafe work environment. [sic]"
- Her co-workers asked her to do other's "rework".
- Her co-workers broke the rules and had open containers on the sewing floor.
- She was discriminated against because she reported someone smoking in the bathroom.
- She states the numerous allegations previously made against Mary Reese.
    - She called her "sexy."
    - She came in on her in the bathroom.
    - She brushed up against her breast.
    - She grabbed her hands.
    - She caught her eavesdropping on her in the bathroom.

19

- ▪ She followed her home and to Wal-Mart.
- Her co-workers conversations about "sports (football games)" . . . "created an unsafe work place."
- Her co-workers did bad work and management did nothing about it.

(Doc. 37 pp. 1-4).

To establish a *prima facie* case of a sexually hostile work environment under Title VII, Plaintiff must establish (1) she belongs to a protected group; (2) she has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment was based on Plaintiff's sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable. *Mendoza v. Borden, Inc.,* 195 F. 3d 1238, 1245 (11th Cir.1999). The "sufficiently severe or pervasive" requirement is "crucial" so that courts "do not mistake ordinary socializing in the workplace – such as male-on-male horseplay or intersexual flirtation – for discriminatory 'conditions of employment.'" *Gupta v. Florida Bd. of Regents,* 212 F. 3d 571, 583 (11th Cir. 2000) citing *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 1003, 140 L.Ed.2d 201 (1998). Indeed, the United States Supreme Court has emphasized that this requirement is included so that Title VII does not become a mere "general civility code." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141L.Ed.2d 662 (1998).

In order to establish this factor, Plaintiff must not only demonstrate that "she

20

subjectively perceived the environment as hostile and abusive", but that her perception is "objectively reasonable" such that a "reasonable person would perceive the environment to be hostile and abusive."   *Flippo v. American Power Source,* 2014 WL 2006419 * 8 (N.D. Ala. 2014) citing *Mendoza,* 195 F.3d at 1246; *Faragher*, 524 U.S. at 788.   In determining whether the sexual or gender related conduct is "sufficiently severe and pervasive from an objective standpoint to alter an employee's terms and conditions of employment" this court is guided by four factors concerning the conduct – (1) the frequency; (2) the severity; (3) whether it is "physically threatening or humiliating, or merely an offensive utterance"; and (4) whether it "unreasonably interferes with the employee's job performance."   *Id.* (citing *Mendoza,* 195 F. 3d at 1246).   The Court concludes that while Plaintiff obviously found Mary Reeses' alleged conduct and the conduct of other employees offensive, there is no evidence that the conduct interfered with Plaintiff's job performance.[4]   As for whether the alleged conduct is objectively "physically threatening or humiliating" sufficient to survive a motion for summary judgment, the court is persuaded that it is not based on a comparison of other cases.

Indeed, other Circuits have found similar or more offensive conduct insufficient as a matter of law to establish a claim based on sexual harassment.   *Id.* at 9 citing *Adusumilli v.*

---

4  The Court recognizes Plaintiff alleges that when co-employees "messed" with her, she would talk to herself quietly using profanity.   However, this allegation does nothing to prove that her job performance was affected adversely.   Rather, several times Plaintiff complains that she was made to check and redo other employees' work, which would indicate to the court the opposite; that is Plaintiff was capable of doing extra work.

*City of Chicago,* 164 F. 3d 353, 357 (7th Cir. 1998)(No hostile work environment where co-employees made sexual jokes directed at the plaintiff and teased her and specifically asked her what "putting one rubber band on top and another on the bottom means", and commented about her low neck line, stared at her breasts and on four separate incidents touched her arm, fingers or buttocks.); *Shepherd v. Comptroller of Public Accounts of Texas,* 168 F. 3d 871, 872-75 (5th Cir. 1999)(No hostile work environment where there were several instances over a two-year period, including the comment "your elbows are the same color as your nipples," another comment that plaintiff had big thighs, and a touching of plaintiff's arm, and attempts to look down the plaintiff's dress.); *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 768 (2d Cir. 1998)(No hostile work environment where comment made that plaintiff had the "sleekest ass" in the office and a single incident of "deliberately" touching plaintiff's "breasts with some papers that he was holding in his hand").

The elements of a hostile environment claim based on harassment due to Plaintiff's race, are essentially the same as a hostile environment based on sexual harassment.  Indeed, to survive summary judgment on her racial harassment hostile environment claim Plaintiff must demonstrate (1) she is a member of a protected class; (2) she was subjected to unwanted racial harassment; (3) the harassment was based on her race; (4) the harassment was severe or pervasive enough to alter the conditions of her employment and create a discriminatorily abusive working environment (5) the employer

22

is responsible for the environment because of vicarious or direct liability. --F.3d --, *Adams v. Austal,* 2014 WL 2726171*4 (11th Cir. 2014) citing *Miller v. Kenworth of Dothan, Inc.,* 277 F. 3d 1269, 1275 (11th Cir. 2002).

Plaintiff's allegations of racial harassment are even less compelling than her allegations of sexual harassment.   Indeed, she alleges her employer or co-employees caused her appear late from break, did not eat lunch with her, asked her to do "re-work" for other employees, and talked about her failure to repay a loan.   However, it is unclear how or if any of these allegations of harassment were based on her race.   Furthermore, similar to the sexual harassment claim there is no evidence that "the conditions of her employment" were adversely affected by any of these claims.   After careful review, the court concludes that Plaintiff's evidentiary submissions, which consist mainly of her own vague and conclusory allegations, do not create a genuine issue of material fact about whether SECA subjected her to a hostile environment based on sexual or racial harassment.

The Defendant argues that even if Plaintiff could possibly establish a hostile environment claim based upon sexual or racial harassment, that summary judgment is due to be granted under *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d (1998).   Indeed, under *Faragher* to prevail on a hostile environment claim, a plaintiff must demonstrate that the employer (1) "knew of or should have known" of the alleged harassment; and (2) failed to take any remedial action. *Id.* at 807.   The

23

undisputed evidence before the court demonstrates that SECA investigated Plaintiff's internal complaints in May and June 2012 and again in April, 2013 and that the EEOC also investigated Plaintiff's complaints, issuing right to sue letters in April 29, 2013 and July 21, 2013.   Plaintiff does not dispute these facts.   Indeed she presents no argument or evidence to controvert SECA's investigation of her claims.   Accordingly, the Court concludes that summary judgment is due to be granted in favor of SECA on Plaintiff's hostile environment claims.

## VI.   CONCLUSION

Accordingly, for the foregoing reasons, it is the **RECOMMENDATION** of the Magistrate Judge that Defendant's Motion for Summary Judgment (Doc. 31) be **GRANTED,** that this action be **DISMISSED** with prejudice and that all pending motions be **DENIED** as Moot.

It is further **ORDERED** that the parties are **DIRECTED** to file any objections to the said Recommendation not later than **July 31, 2014.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the

District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.   *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 17th day of July, 2014.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE